## HIGHWAYS—RAILROADS—NEGLIGENCE.

[Hamilton (1st) Circuit Court, May 11, 1904.]

Swing, J., and Dustin, J., of Second Circuit. No other judge sitting.

### NORFOLK & W. RY v. GREAT CHINA TEA CO. ET AL.

NEGLIGENCE OF RAILROAD COMPANY AT CROSSING WILL NOT EXCUSE TRAVELER'S NEGLIGENCE.

Negligence of a railroad company in running a train of cars at a high rate of speed, and in failing to ring a bell when approaching and passing over a public crossing, will not warrant a recovery for damages resulting from a collision caused by plaintiff's voluntary negligence in failing to exercise his senses of sight and hearing before attempting to pass over the crossing. Balt. & O. Ry. v. McClellan, 69 Ohio St. 142, followed.

ERROR to Hamilton common pleas court.

Hollister & Hollister and W. A. De Camp, for plaintiff in error.

Moulinier, Bettman & Hunt, Maxwell & Ramsey and John R. Schindel, for defendants in error.

SWING, J.

This was an action in the court of common pleas for damages for the killing of two horses owned by the tea company, and also injury to property of the tea company, which resulted from a collision between the horse and wagon of the tea company and the engine of the railway company at a point on the P. C. C. & St. L. Railway Company, at Hazen street in the city of Cincinnati, Ohio. A trial was had in said court, which resulted in a verdict and judgment in favor of the tea company. To this judgment error is presented to this court.

There is very little conflict as to the material evidence in the case. S. B. White was driving a delivery wagon belonging to the tea company, on December 10, 1901, between 9 and 10 o'clock A. M., and started to cross the said railway company's tracks, going by way of Hazen street, from Eastern avenue to Gladstone avenue in the eastern part of Cincinnati. The approach to the railway company's tracks on Hazen street was very steep, having a grade of from fifteen to twenty per cent. The street was not a main thoroughfare, being but little used on account of its steep grade. White testifies that he started from Eastern avenue and drove up Hazen street to a point where the front feet of his horses were in the middle of the north track of the railroad, at which point he stopped and at which point he first saw the engine approaching on said north track, about two hundred feet away. He did not stop on his way up Hazen street, but kept constantly listening and looking for approaching trains.

The evidence is conclusive that White could have seen the approach-

ing train 365 feet away at a point eighteen feet south of the south rail of the north track if he had looked, and it is equally certain that he did not look, for he says that he did not see the approaching train until the front feet of his horses were in the center of the north track, and at which time the train was about 200 feet away. If the front feet of the horses were in the center of the north track, they were, according to measurements, twenty-two and one-half feet from the point where the train could first be seen, and White could not have been more than ten feet back from the front feet of the horses; but say he was twelve and one-half feet back; he was still ten feet nearer the railroad track than the point from which he could have seen the approaching train before he even attempts to look for it. He says he looked and listened, but his own evidence and the undisputed evidence clearly shows that he did not.

There is evidence offered by the tea company to the effect that no bell was rung by the railway company. There was also evidence offered by the tea company that the train was running at a very high rate of speed, and these are the acts of negligence which the tea company claims are grounds for recovery. The jury had a right, we suppose, to believe this evidence, but granted that no bell was rung, certainly the noise of the train was present, and could have been heard by White long before he became aware that the train was approaching. It does not appear that any other noises were present to prevent his hearing the approaching train, and while he says that he listened, there is no way to escape the conclusion that he did not. So it seems certain that he neither looked nor listened at a point where he could have seen and heard the approaching train so as to have avoided the collision.

White was absolute master of his movements; there was no impending danger confronting him, and his horses were entirely under his control, and he voluntarily placed himself in the position where the collision occurred; in doing this he was clearly negligent. It matters not whether the railway company did not ring a bell or was running at a higher rate of speed than twenty miles an hour, which is the usual rate of speed of trains at that point, it is clear that the negligence of the tea company was the cause of the accident, and not the negligence of the railway company.

The evidence does not support the verdict and judgment.

The case, we think, is governed by the decision of our Supreme Court. Baltimore & O. Ry. v. McClellan, 69 Ohio St. 142 [68 N. E. Rep. 816].

Judgment reversed and cause remanded for further trial.

**Dustin, J.,** concurs.